Next case this afternoon is Jorge Roberto Lupera-Espinoza versus Attorney General. Mr. Laufer. Good afternoon, Your Honors. My name is Greg Laufer. I represent the petitioner in this case, Jorge Roberto Lupera-Espinoza. I'd like to reserve five minutes of my time for rebuttal, if I may. Granted. Thank you, Your Honor. Your Honors, Mr. Espinoza came to this country some 35 years ago from Ecuador when he was around six or seven years old. He has been ordered, deported by the Board of Immigration Appeals back to Ecuador after all this time. We are asking this Court to vacate that order of removal against him and to remand this matter to the Board of Immigration Appeals for further proceedings. As you might note, we also are asking this Court to stay the removal order against Mr. Espinoza pending the adjudication of his petition for review in this court. We're asking for this relief for two primary reasons. First, the Board of Immigration Appeals wrongly concluded that Mr. Espinoza is not statutorily eligible for Section 212C relief. And second, Mr. Espinoza suffered two important due process violations that afflicted the removal proceedings that resulted in his removal from this country. I'd like to address, if I may, the Section 212C issue first. The Board of Immigration Appeals... Let me stop, Counselor, right now. I just want to know, is there a danger that this man is going to be removed before we make a decision in this case? There is, Your Honor. His projected release date, according to the BOP, is March 13th of this year, I believe, so only a few weeks from now. So if this Court does not adjudicate his petition for review in advance of that date, my understanding is that there's a detainer out on him from ICE and that he'll be paroled into their custody and deported in however much time it takes, which should not be all that long under the circumstances. Thank you. You're welcome. I'd like to address, if I may, the Section 212C issue first. As I said, the Board of Immigration Appeals committed two fundamental legal errors. First, the Board of Immigration Appeals held that Mr. Espinosa was statutorily ineligible for Section 212C relief simply because he had a conviction from 2007 that postdated the amendments to the Immigration and Nationality Act that came about with the DEPA and ERIRA in 1996 and 1997. This conclusion was wrong because the relevant date under the law for purposes of determining Mr. Espinosa's eligibility for Section 212C relief was the date of the commencement of his removal proceedings and not the date of his conviction. This is really a question of simple statutory construction. The text of ERIRA very clearly says that the amendments that were carried into law by that provision shall not apply to petitioners in Mr. Espinosa's position, that is, petitioners whose removal proceedings began before the effective date. The Second, Sixth, Fifth, and Ninth Circuits have already interpreted ERIRA in this very fashion. In fact, there really is no other plausible reading of the statute given the mandatory language that it uses, and the government has not even proposed an alternative interpretation in this case. As I said, it is undisputed that Mr. Espinosa's removal proceedings were begun before the effective date of ERIRA, under the law, under the weight of authority, and according to settled principles of statutory construction, Mr. Espinosa should be permitted to proceed with his application. It's strange. I mean, you make, I think, a strong statutory argument, but I think you have to concede it's a little odd that he would get the benefit of a pre-ERIRA removal proceeding for a crime that he committed many years later after ERIRA. None of the reliance interests that the Supreme Court found significant in St. Cyr in reaching its decision there obtained for this 2007 conviction, do they? That's true, Judge Hardiman, but I don't think that it's odd for the following reason. St. Cyr is really not applicable here. All that matters here is that ERIRA says that the amendments that that provision carried into law shall not apply to petitioners in Mr. Espinosa's position. I don't think that this is a retroactivity analysis question. This is simply a question of whether the relief that was available to Mr. Espinosa in 1994, when he originally filed his application for Section 212C relief, remains available to him now. What if the agency just closed out that proceeding and opened a new one in light of the 2007 conviction? That would be a very different circumstance. You wouldn't have an argument then? I don't think that we would be making the arguments that we're making now. You say it would be very different. Everything may turn on it, but what sense does that make? Had they just simply closed the 1994 one and started all over again in 2007, why should that be very different? Thank you, Judge Stark. I can't claim to know exactly what was going through Congress's mind, but that is the way the law is written. That is the clear and unambiguous language, and there are three other circuits that have so held in presidential opinions and one that has so held in a non-presidential opinion, and we think that this circuit should join its sister circuits in that interpretation of the law, which, as I said, is quite clear and driven by the plain text of the statute. Even if we agree with your position on that, don't you have another problem with the how do you get around the five-year problem? And that's really the second error that the Board of Immigration Appeals committed. This Court has already said in the Caraleo case that equitable considerations are entirely appropriate when a court considers whether a petitioner in Mr. Espinosa's shoes is subject to the five-year bar or not. I'd like to explain briefly, if I may, what those circumstances are in this case. As I said, Mr. Espinosa filed his original application for Section 212C relief way back in 1994. His removal proceedings at the time were administratively closed, and then they were reopened in 2010. There were some key events that happened before the reopening of the removal proceedings in 2010. Mr. Espinosa was arrested in 2004 in connection with a drug conspiracy offense. He was ordered detained by a magistrate judge in the Eastern District of New York. From 2004 until 2007, he was detained pursuant to that detention order. There were all sorts of administrative delays in connection with his criminal proceedings. He finally pled guilty in 2006, but a judgment of sentence was not entered against him until 2007. So right there, there was a three-year period when he was technically, he was incarcerated. But we would submit that under Caraleo, that time should not be counted against him. There's an additional three-year period that should not be counted against him. From 2007, after the judgment of sentence was entered, until 2010, for reasons that are not apparent from the record and that we can't explain or that the government has offered no explanation for, the government did not reopen Mr. Espinosa's removal proceedings for three years after that judgment was entered. So that's an additional three years that Mr. Espinosa was unable, was incarcerated, and unable to renew or refile his application for Section 212C relief. In other words, we're looking at approximately six years, 2004 to 2007 and 2007 until 2010, during which Mr. Espinosa was basically at the mercy of the executive branch of government and had no choice but to sit in prison and basically wait out his time until he was able to ask the immigration authorities. Counsel, let me interrupt you on that issue. If we assume that the BIA could even or even should have considered his application for a 212C waiver not pro torte, as to some other date, on appeal, what standard of review do we apply in reviewing the BIA's decision not to use this equitable doctor? It is a question of law, whether he is statutorily eligible for Section 212C relief. That is the overarching issue Judge Aldous Sirte, issues of law are reviewed de novo. Okay. If he were to submit an application for Section 212C relief and that issue came to this court, I'm not sure this court would even have jurisdiction because I'm not sure discretionary. So it's open season as far as we're concerned, right? I'm sorry? It's open season. It isn't a question of discretion. It isn't a question of fact. It's a question of law. Absolutely, Judge Aldous Sirte. In fact, as you'll note from the BIA's two decisions, there were no factual findings made on this issue because Mr. Espinoza was precluded from even advancing any reasons in favor of this 212C application. Therefore, this is really just an issue of whether he's statutorily eligible. That's a question of law that this court has free reign over. I want to say this to you, sir. I think that the first issue that you raised is up to question, and this one here is something else. But we cannot, in as much as, let's see, he spent five years in prison. Really? How can we give you relief unless we extend an equitable doctrine of non-protonque? And what is there with this man who served two prison sentences that would make him a candidate for equitable relief? Thank you, Judge Aldous Sirte. There are a couple of responses to that. First, I'm not sure that his personal circumstances are relevant to the question whether he should be entitled to this form of equitable relief. I think that the factors that the court should consider in determining whether Mr. Espinoza is eligible for non-protonque relief in this circumstance. What? I misspoke. I mean eligible. Yes. Go ahead. Well, whether he's statutorily eligible I don't think is a question of fact at all. I think it's simply a question of law whether he is entitled to seek that relief. But in terms of whether the five-year bar should preclude him from seeking that relief, I think you have to look at all of the circumstances of this case. And I admit, as we said in our brief, the circumstances of his incarceration from 2004 until 2010, that six-year period, there's no factual record to shed any light on exactly what happened and what the nature of the delays were. That is why we're asking this question. Sir, why should we apply the non-protonque doctrine in this case on this issue? Well, because, Judge Aldisert, Mr. Espinoza had an outstanding application for Section 212C relief. He was arrested in 2004. And because of a detention order and really six years of delays that, as far as we understand, were caused by the government's own dilatoryness, he was precluded from renewing that application. And, in fact, he was not even – But he was free. He was free to go out. He was not free in 2004. The government is essentially saying that he has served – and this is what the BIA held – that he has already served five years of a 10-year sentence because, as of the date of its removal order in August – I'm sorry, in March of 2012, he had been in prison for at least five years on that sentence, the drug conspiracy offense that he was arrested for in 2004. And what we're saying is, if you look at the entire record, he was arrested for that offense in 2004 and was unable to take any action in connection with his 212C application until 2010, at the very earliest, when the government reopened his removal proceedings. Before that time, there was absolutely nothing he could do. But for the detention order in 2004, the fact that it took two and a half years, I think, for him to plead guilty, another year for the court to sentence him, and then another three years for the government to get around to asserting an additional ground of removability against him based on the 2007 conviction, he would be entitled to seek this relief. And we think that in light of all those circumstances, Mr. Espinosa is entitled to equitable considerations. But even more important, as I said, the factual record here is a little bit undeveloped, so we think at the very least the court should remand so that that issue can be given a little bit more study. Isn't there, Mr. Lauffer, an inherent contradiction in your position? Because you make a very technical legal argument on issue number one, and you've got a lot of strong support for that, three courts of appeals to which you cited. But then on issue two, you turn around and say, well, we're not going to get technical with the statute. The statute does say clearly if you've served five years, you're out, so let's not worry about the statutory language. Tell me why we shouldn't hoist you by your own petard. Understood. With respect to the first issue that I discussed, that statutory provision is clear and unambiguous. There's really no way around it. On the second issue, there is no law of which I'm aware that says judiciary, thou shalt not under any circumstances allow a petitioner in Mr. Espinosa's position or any other petitioner to get around the five-year bar. All that statutory provision says is that petitioners who have served a term of at least five years are not permitted to seek Section 212C relief. And I think that there's a fine distinction there. Not so fine, in fact. The language in ORIRA was plain and unambiguous and mandatory. The language that we're talking about in connection with 212C, which I think came about as part of some amendments in 1990, doesn't have that mandatory language. And this Court has already indicated in the Caraleo case that equitable considerations are entirely appropriate under particular circumstances. So given that, I really don't think that there's so much of an inconsistency between those two positions, Judge Hartman. If we don't agree with you on both of the statutory questions, do you still have a due process challenge? We do.  The immigration proceedings as a whole were a little bit sloppy. I cannot claim it to stand here today and know the entire comprehensive scheme of immigration relief that Mr. Espinosa might be able to avail himself of. There may be other forms of relief. So I do think that there's a reason to send this back, and the fact of the matter is that the Board of Immigration Appeals may be willing to reconsider its position. So it wouldn't be that you could get 212C relief if we don't agree with you on the two statutory questions, but your argument is there may still be some other way you can get some relief, and therefore we'd have to reach the due process question. Absolutely, Judge Stark. Mr. Espinosa was pro se in his removal proceedings both before the immigration judge both times and the BIA both times. He is now represented by counsel. He will be represented by counsel if this case goes back for further proceedings. All right, counsel. There can be no due process violation without the presence of a protected liberty or property interest. Okay. Because discretionary relief is necessarily a matter of grace rather than right, aliens do not have a due process interest in consideration of such relief. That's the Tories' case. Would you comment on that? Yes, Judge Aldersert. There is admittedly some tension in the case law. It is, of course, well settled that as a general matter to make out a procedural due process claim, a claimant has to show that he or she has some entitlement to relief. Discretionary relief by its very nature is something that a claimant cannot have an entitlement or a right to. But this court has time and time again, excluding the language that you just cited in the immigration context, said that petitioners like Mr. Espinoza has to have a meaningful opportunity to be heard and an ability to make arguments on his own behalf. And we don't think that there's any doubt that that just did not happen here. And if I could talk quickly about the sequence. Yes, Judge Aldersert. You've reserved time on rebuttal. I have. We'll hear you on rebuttal. Very good. Thank you. Thank you. Ms. Fassett, did I pronounce that correctly? Fassett. Fassett, I'm sorry. May it please the Court, my name is Lauren Fassett, and I represent the respondent, United States Attorney General. Here, the simple reality of this case is that Mr. Espinoza is not eligible to apply for 212C to waive his 2007 aggravated felony controlled substance conviction. This is because the law, as of 1990, and applicable in 94 when he was put into proceedings, 212C relief was not available to an alien who was convicted of an aggravated felony for which he had served a term of imprisonment of at least five years. Mr. Espinoza had served more than five years of his 10-year sentence when the Board considered his eligibility for 212C. The petitioner here has acknowledged the five-year imprisonment bar. He has conceded that his conviction constitutes an aggravated felony. He has admitted that he served more than five years at the time the Board considered his application for 212C. So this issue is dispositive. He is barred by the statute from getting 212C relief because of having served at least five years in prison. Now, petitioner makes this argument about equities that doesn't really make sense in this case. He's never fully challenged that the date should be when the Board considers the application. And that is, while this circuit hasn't said, that is clear interpretation of the statute by the agency, and the First and Fifth and Second Circuits have all held clearly that the time of imprisonment will continue to accrue up until the Board's decision when it denies the 212C relief. And that happens both ways for aliens. Sometimes that's to help them. They can continue to accrue physical presence for other requirements for cancellation of removal or good moral character to meet some requirement. In this case, just as they usually hold, the time continues to accrue until the Board decides the 212C issue. And here, he had served more than the five years. Also, it doesn't make sense to, the petitioner's argument would be to consider his application back at the time that it was filed in 1994. But if we look at the application in 94, how could it waive a 2007 conviction that had not been committed yet? That doesn't make any sense. And that would essentially be making the argument that he can file this application back in 94, and then that should cover him from all future crimes he might want to commit at any point in time after that. That's not what 212C relief was supposed to be for, and that does not in any way fit under the normal reasons for a court doing something as a matter of equity here. And as the judges discussed earlier, if his case had been considered in 94, which he filed the 212C application to waive his 93 crime, let's say that had been adjudicated, then those proceedings would have been closed. And when he committed his 2007 crime, 212C would not at all be an option here. So there is no rational argument that there is any equity, that he should be allowed to ignore the bar, the five-year term of imprisonment bar here, and have his 212C application considered. It's a strange case in my view, Ms. Fossett, because I don't appreciate why the government didn't just reopen a new case. Why would the government suffer the risk that he would be able to take advantage of this technicality in ERIRA, according to what the other three courts of appeals have held, rather than just close that case and open a new case relative to the 2007 conviction? Can you enlighten us on that? The record is not clear. It says that in 1994 his proceedings were administratively closed because he was paroled into INS custody prior to his hearing. That's all the information that's in the record. But I can say, so I don't know specifically in this case what was the reasoning, but usually when a case is administratively closed, it requires agreement by both parties. And why that was done I don't know, but in any case it bought him an advantage of not being removed or at least adjudicating whether he was removable for his 93 crime. It just sort of went away. Are you suggesting that that administrative closure inhibits or precludes the government's ability from opening a new case based on the 2007 aggravated crime? Well, it complicates the procedure because they would have to have somehow closed those proceedings and then reopened new ones. And why they didn't do that here, they just simply reopened what was already the former proceeding. So I can't say why they did that. And, yes, it has complicated the issue, but it happens either way. You've seen it commonly both ways. This is not some sort of exceptional procedural circumstance in your experience? Correct. It seems like it was administratively closed, he was sort of off, served his time for his 93 conviction and all was well, and it wasn't reopened until it was brought to the attention that he had committed a new crime. So really it was reopened spurred by him committing the 2007 crime. But at that point they just reopened the former proceedings. So the government's just lucky that he spent more than five years in jail? Is that where we are then? No. Because if he hadn't spent the five years in jail, they've got a pretty compelling argument that he's entitled to pursue 212C relief, right? Well, two points to respond to that. If he hadn't served the five years at the time of the board's decision, it still would have been a matter of discretion whether he would have gotten 212C. But, yes, I suppose at that point the board would have considered the application and not said he was barred from applying in the first place. But ultimately the relief would have been discretionary, so it would be speculation to think that he would have actually gotten 212C. But in terms of whether he's allowed to apply for 212C at all based on a post-arrear 2007 conviction, the government doesn't address this issue in the brief because it doesn't matter here. The five-year bar, which is clear, is enough to say that he is not eligible to apply for 212C, so the court need not reach that issue. However, this court has not reached that issue in a published case, and the agency of the board in considering the issue relied on the controlling Third Circuit law that spoke to the related issue and that those cases implied that the Third Circuit would not agree with the ninth. What case do you say that we – you're talking about Edwards? Is that Edwards? It's Perez v. Elwood. Oh, I see, yes.  Oh, I saw those. And Franco-Monegro is actually the exact situation. Well, I read all those cases, and I don't think they're directly on point. You'll have to concede that, will you not? They're not exactly on point. Franco-Monegro is directly on point, but it was an unpublished case, and the other two are not directly on point, but they have language in them that implies that this court would not find him eligible. So to that end, the board did not make a finding in the first instance whether they think that 212C would be eligible here. The board has discussed the issue in two unpublished cases, but they haven't had a chance to do it in a published case. So if this court did not agree with the five-year bar, which is clearly a bar to his eligibility here, and wanted to address whether he was eligible to apply for 212C with a post-arrear conviction, the government would ask that the court remand for the board to consider and decide that issue in the first instance. How could we possibly ignore that second five-year? Is it an aggravated felony? Well, I don't think that's – How could we possibly ignore that? I don't think you should, Your Honor. I think it's clear here – I know you – I don't – I didn't ask you whether we should, but how could we? Because I'm anticipating your friend coming back on rebuttal. Well, you can't. The statute is completely clear. The time period up to the board decision, he had served well more than five years. The first circuit and the fifth circuit and the second circuit have all clearly explained that the time period, the relevant time period, goes to when the board looks at – it says the five-year period is measured not as the date of the 2000 – I'm sorry, the 212C application is filed, but as of the time of the final administrative decision. And that specific argument wasn't challenged by Petitioner. He just wants this vague equity argument that, again, does not make sense. And in relying on the one case that Petitioner cites, Carulio, that case is completely different than what we have here for several reasons. In Carulio, he was indicted in 1993, and in the end, it was determined that his conviction is pre-Arrera because he pled – or he accepted a plea offer in March 1996. Arrera took effect in April, and Ed Puzo. So – but his removal proceedings were initiated in 2000. And there, the court did not directly reach this issue. They specifically said, we're not going to reach this issue. But they said, were we to hold – were we to consider whether he could get around the five-year bar, that they might be inclined to let him be considered. The difference there is that the five-year bar for him, when the board denied his 212C relief, he still hadn't reached the five years. But the board denied it because he had given the wrong date about when he was convicted, and at the time, based on that information, he wasn't eligible. It turns out the date was actually before, and he would have been eligible. So there, there's an equity because he still hadn't reached the five years in prison at the time the board denied his 212C relief. Here, that's not what we have. We have a post-Arrera conviction where the board had – he had clearly passed the five years of imprisonment at the time the board looked at his 212C application. So there is no legal argument here that makes any sense. There's no case law or statute to support waiving the clear bar to 212C relief after having served five years in imprisonment. And Petitioner only relies on this vague equity argument, but it doesn't make sense, and it's not appropriate in this case. Let's talk a little bit about due process, or at least what Petitioner refers to as due process. Do you agree that we need to reach those issues that he's raised if we don't agree with him on the statutory questions? No, Your Honor. Here, it's very clear that they – this court has held there is no due process right to discretionary relief because there's no liberty interest in something that is completely discretionary and not guaranteed. Is there any limit to that, or does that mean when we're in 212C world, the INS and the board can do whatever they want, have no procedure, have arbitrary procedures? Well, this court has also said that there's no due process right in applying, in the process of applying for relief. So in that sense, in any argument he has that he was not properly allowed to apply for 212C relief, there's also no due process violation because that's all discretionary relief. And the other issues that Petitioner mentions about not being able to present, you know, participate in a full and fair hearing, they're lack of merit, essentially. I mean, initially he went before an immigration judge. He was told about the availability of, you know, the opportunity to find a lawyer. He was given the list of attorneys. Petitioner says that he didn't receive it, but in the record, Petitioner clearly tells the immigration judge that he wrote letters to the attorneys that you guys provided me with the list. So he had the list, and he wrote letters to those attorneys. He was given three continuances to find attorneys. He participated in all of his hearings at that point. He doesn't participate at the last one, well, because there is no last one. There is no last one, but, well, there's one where the immigration judge explains, this has been remanded purely for 212C relief consideration. And the government mentions some issues, and the judge says, would you write this up in a memo, give it to me, give it to Petitioner, and I will decide what we're going to do from there. So, yes, there was a hearing scheduled after that, but that hearing never happened because the immigration judge made a decision. But that only goes to the process of applying for 212C and the denial or the finding that he wasn't eligible. And there, there's no due process, right, because, again, that's a discretionary relief. There's no due process for that. So I'm coming, I come back to, I'm concerned as to whether the government would recognize any limits to that. What if instead of the IJ deciding he didn't need the hearing after he saw the memo, he decided he really wanted to rub it in the Petitioner's face. So he did bring him in and said, let me hear from counsel for the government, and directly told the Petitioner, I'm not going to hear from you, I'm not going to let you get anything in writing, or even I'm going to flip a coin right here in the courtroom. None of that would create any due process concern. Well, that could, but that is not at all the situation here. I mean, that's an egregious situation that here we have. He had many proceedings to apply for any kind of relief. He was granted continuances, not just to find an attorney, but to present evidence of the relief or his claims that he was a citizen. He was allowed to present any arguments at any time during that. He could have presented appeals to the board with his arguments. So just the immigration judge making the determination, when it was only remanded for 212C relief consideration, that he wasn't eligible to apply, does not create a liberty interest because there is no liberty interest in this discretionary relief, and that would be the position here. So to summarize, this case actually is quite clear that he is not eligible by the statute to seek 212C relief because he had served more than five years of a 10-year prison sentence for his aggravated felony, and that the board correctly then decided that that bar applied to him, and he wasn't eligible for 212C relief. What about the motion to stay, if we're not going to be able to resolve the petition before the March date? Do you still oppose the relief sought? I do still oppose the motion, and I would say that in my files I have that having discussed with DHS that there is no travel plans at the time, or at least as of two weeks ago, they didn't have travel documents or any particular plan to remove him. So I would not say that he is going to be immediately removed when he is released from prison, but either way, we still oppose the stay, and that this court could still decide the case even if he is removed. What harm would there be to the government if you agree to delay execution of removal until this court makes a decision? Well, it's not my decision, it's with DHS, and the harm is that they either have to put him in detention, and then they try to find travel documents, and then they have to wait, and it creates a backlog which creates problems for everyone else who's in the removal process. And here, he didn't meet the standard for a stay. There's no likelihood of success here. As we just discussed, he's clearly not eligible to receive relief, and he has no other relief requested. He conceded that he is a citizen and national of Ecuador. He conceded the charges of removability, so there would be no reason for him not to be removed. If there are no further questions. Thank you, Mr. State. Rebuttal, Mr. Laffer. Thank you. I'd like to start, if I may, very briefly on the due process argument. Judge Stark, I think you really hit the nail on the head with your coin-flipping hypo, and I think what I heard is that the government basically conceded that in that hypothetical, there could be a procedural due process violation. Analytically and legally, I am failing to come up with an actual distinction between the circumstances that actually exist on this record and the hypothetical that you described. In both situations, the immigration judge basically said, I don't care what you're going to say in response to the government's arguments. I'm going to adopt the reasoning of the government in full and order you back to a country that you haven't been to in three and a half decades without hearing why I'm wrong. And after the IJ did that, what arguments did your client make to the BIA? What proffer was made to the BIA that if I had only the opportunity to have my say in the trial court, I would have presented the following evidence? He argued on appeal to the BIA that he was not subject to the five-year bar. That's a legal argument. Correct. All right. What evidence was he hoping to present to the IJ when the IJ deprived him? The IJ did, I think it's safe to say, mislead him. I'm not suggesting that was intentional. But my recollection is the IJ said, we'll have you back here on the 8th. The government, give me some papers. Mr. Espinoza, you'll have a chance to respond. And the IJ short-circuited all that and decided the legal issue. Am I remembering that correctly? That's exactly correct. It was September 27th, November 2nd, and then November 4th. And Mr. Espinoza never actually was served with the government's brief. So he never had a chance to respond. Never saw it, never had a chance to rebut those arguments. So then one would expect, wouldn't one, that on appeal to the BIA, the complainant would say this truncated process in the trial court deprived me of the opportunity to proffer this, that, and the other thing, right? And it would have to be something more than a legal argument because we all know from summary judgment practice and we know from our own court with this sitting, we're deciding numerous cases without inviting the parties or the counsel in to be heard in open court. We're deciding them on the papers. That's right. I think that the BIA misunderstood. Mr. Espinoza has never maintained that he was going to submit documents or other sorts of evidence or make any proffer. It really does come down to legal arguments. If you look at the DHS memorandum that was submitted on November 2nd, all it is is legal arguments. We now have Mr. Espinoza's response to those legal arguments, don't we? We do. You've articulated them here today as well. As well as I can, yes. So if we didn't buy them here, then what's left of the due process argument? As I said during my opening, Judge Stark, I don't know if there's another form of relief. If this court holds categorically that Mr. Espinoza is not entitled to even pursue an application for Section 212C relief, I grant that the BIA would be bound by that decision. It is a presidential decision of this court and would not be able to entertain such an application. But there may be other forms of relief. And given the overall sort of sloppiness of the proceedings for the immigration judge and the fact that he clearly did something, whether intended or not, that deprived Mr. Espinoza of an opportunity to respond to arguments that were adopted in full and used against him, I think that there are grounds for vacater and sending this back for additional proceedings. If I could just very briefly also address the other due process argument. Judge Aldersort, the Leslie case is a case that you authored in 2007, and I think we pointed this out in our brief. The government doesn't even cite that case in its brief, despite the fact that we spent pages discussing it and the Pica v. Mukasey case in the Second Circuit that Leslie endorsed quite specifically. And I don't think that there's any indication in the record here that the immigration judge honored his obligations under the Code of Federal Regulations by actually ascertaining whether Mr. Espinoza had obtained a list of free legal services. As the government pointed out and as we pointed out in our opening brief, it is true that Mr. Espinoza made a reference to some list that he had seen of lawyers. But we have no idea what that list was. There's no list in the record. You would think that it would be appended to the notice to appear. It is not. And there's no indication from the immigration judge that he actually considered and determined whether Mr. Espinoza had received a current list of free legal services, as he was required to do under the regulations. On the stay issue, I think all we have right now is a representation from Ms. Fassett that, as of two weeks ago, the government – I'm not sure really what that's worth. The fact of the matter is that Mr. Espinoza has been here for 35 years. He came here when he was six or seven. He's been in jail for the last several years. He has absolutely no money. His mother lives in Brooklyn. His siblings live in New York. He has spent his entire life in New York, except for the first six or seven years. If he goes back to Ecuador, he will literally get off a plane in Quito or Guayaquil or wherever they sent him. He will walk onto the tarmac. He will be homeless and broke, and he will know nobody. I think under these circumstances, it's not too much to ask to give him a little bit more time until this court can adjudicate his petition. Just one more thing. Will we find in the record here that it is conceded that your client has served at least five years of incarceration? Because earlier in your argument, you talked about maybe these three or six years don't count. But the suggestion I heard from the government is that that issue was conceded by your client earlier. Is that true? You mean before this petition for review was filed? Well, I do not believe that Mr. Espinoza himself conceded that in the record. As I think back on the record, it's possible that it's there. But as I stand here right now in front of you, I don't think that's true. My understanding is that he was detained as of 2004 and that he's still in prison. It is my understanding that he has served five years in prison. Okay. But you're arguing that some of that may not be countable time for purposes of the five-year ban. A great deal, yes. Okay. Thank you very much. Were you a pro bono in this case, Mr. Laffin? We were. All right. Thank you. The court gratefully acknowledges your appearance in this case on behalf of Mr. Espinoza. Thank you. You've been a great assistance, as has Ms. Fassett. The case was very, very well argued and well briefed, and the court will take the matter under review.